IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**CHAD EDWARD WEISS,**

    **Plaintiff,**

    v.                        CASE NO. 18-3112-SAC

**JEFF EASTER, et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff, a state prisoner appearing pro se and in forma pauperis, filed this civil rights complaint under 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was housed at the Sedgwick County Jail in Wichita, Kansas ("SCJ"). Plaintiff filed his Second Amended Complaint (Doc. 27) ("SAC") on June 18, 2019. This matter is before the Court for screening of Plaintiff's SAC.

### I. Nature of the Matter before the Court

In the single Count of his SAC, Plaintiff alleges that he was denied proper medical care in violation of his Eighth and Fourteenth Amendment rights. Plaintiff alleges that he arrived at the SCJ on January 2, 2018, escorted by Deputy Jamerson. Jamerson informed the booking deputy, staff and Defendant LPN Ireland that Plaintiff had injuries to his head and jaw, with stitches in both. LPN Ireland examined Plaintiff and could see the four to five-inch indention in his skull with stiches, and his swollen jaw with stiches. Ireland made a call and three physicians (named as Defendants as Person 1, 2, and 3) arrived to examine Plaintiff. Throughout the examination, Plaintiff complained of the pain in his head and the bone fragments in his brain. He complained of pain so severe he felt as if he was "going to die." The physicians left, and

Defendant Ireland got on the computer and wrote that Plaintiff "has no physical injuries." Ireland then had deputies escort Plaintiff to a suicide observation cell where Plaintiff was stripped and made to sleep on a steel bed with no mattress. On January 3, 2018, while in the suicide observation cell, Plaintiff was seen by a mental health provider and released to an open dorm.

Plaintiff wrote a sick call for medical attention on January 3, 2018, and was told by LPN Laura that he was scheduled to be seen on January 10, 2018. Plaintiff wrote a second sick call on January 11, 2018, and corresponded with staff regarding the sick call request. On January 24, 2018, Plaintiff was seen by a physician and received a head x-ray. On January 25, 2018, Plaintiff wrote a sick call request, seeking the results of his x-ray. On January 28, 2018, Defendant Nurse Shana responded and scheduled Plaintiff for follow up on February 15, 2018, for a chart review, and to determine a plan. After the failure to schedule the follow up for Plaintiff, he wrote another sick call on February 22, 2018, and was told by Defendant LPN Veronica that he "was scheduled for follow up with Dr." At the rescheduled follow up, Plaintiff spoke with Defendant Dr. Stopp, who stated that his x-ray came back abnormal and that Dr. Stopp was ordering a CT scan. Approximately seven days later, Plaintiff was taken to Wesley Hospital Imaging Center for a CT scan of his head.

Plaintiff was sent to Dr. Moufarrj, neurologist, who advised plaintiff that there were numerous bone fragments more than an inch and a half long in Plaintiff's brain and that it was Plaintiff's choice regarding whether or not to have the surgery to remove the bone fragments. Plaintiff told Dr. Moufarrj that he did want them removed, and Dr. Moufarrj indicated that he would schedule Plaintiff for the surgery. On April 3, 2018, Plaintiff advised the clinic at SCJ

and CCS that he wanted the surgery. Defendant Denise, Director of Nursing, replied that Dr. Stopp said that it wound not be approved to move forward with the surgery.

Plaintiff alleges that Defendants LPN Laura, LPN Shana, LPN Jennifer, LPN Veronica, and RN Kim, all violated his rights by their handling of his sick call requests. Plaintiff alleges that Defendants Denise, Director of Nursing, and Dr. Stopp, interfered with the specialist's recommendation for surgery and refused to approve the surgery. Plaintiff alleges that Defendants CCS, the clinic liaison, Sgt. Tucker, Lt. Woodson, D2134, LPN Veronica, and Sheriff Jeff Easter, all failed to respond to Plaintiff's grievances.

Plaintiff names as Defendants: Jeff Easter, SCJ Sheriff; Correct Care Solutions, LLC ("CCS"); Harold Stopp, CCS doctor; Lisa K. Ireland, CCS LPN; Denise (lnu), CCS Director of Nursing; Persons 1, 2, and 3, CCS physicians; Laura (lnu), CCS LPN; Shana (lnu), CCS LPN; Veronica (lnu), CCS LPN; Jennifer (lnu), CCS LPN; Kim (lnu), CCS RN; (fnu) Woodson, SCJ Shift Lieutenant; (fnu) Tucker, SCJ Shift Sergeant; (fnu) (lnu) (1), Official D2134 at SCJ; and (fnu) (lnu) (2), CCS Clinic Liaison. Plaintiff seeks declaratory relief, future medical expenses, compensatory damages and punitive damages.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2). The Court finds that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate officials of the SCJ. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate officials of the SCJ to prepare and file

a *Martinez* Report. Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915.

**IT IS THEREFORE ORDERED BY THE COURT** that**:**

(1) the clerk of the court shall prepare waiver of service forms for Defendants, pursuant to Rule 4(d) of the Federal Rules of Civil Procedure, to be served upon Defendants at no cost to Plaintiff. The report required herein shall be filed no later than sixty (60) days from the date of this order, unless the time is extended by the Court. The answer or other responsive pleading shall be filed thirty (30) days after the *Martinez* report is filed.

(2) Officials responsible for the operation of the Sedgwick County Jail are directed to undertake a review of the subject matter of the SAC:

a. To ascertain the facts and circumstances;

b. To consider whether any action can and should be taken by the institution to resolve the subject matter of the SAC; and

c. To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this SAC and should be considered together.

(3) Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff. The Sedgwick County Jail must seek leave of the Court if it wishes to file certain exhibits or portions of the report under seal or without service on Plaintiff. Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official

documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report. Any recordings related to Plaintiff's claims shall also be included.

(4) Authorization is granted to the officials of the Sedgwick County Jail to interview all witnesses having knowledge of the facts, including Plaintiff.

(5) No answer or motion addressed to the SAC shall be filed until the *Martinez* Report required herein has been prepared.

(6) Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed Defendants' answer or response to the SAC and the report ordered herein. This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS SO ORDERED**.

**Dated in Topeka, Kansas, on this 12th day of July, 2019.**

<u>**s/ Sam A. Crow**</u>
**Sam A. Crow**
**U.S. Senior District Judge**