IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CHAD EDWARD WEISS,<br><br>    **Plaintiff,**<br><br>v.<br><br>JEFF EASTER, et al.,<br><br>    **Defendants.** | Case No. 5:18-cv-03112-HLT |

### MEMORANDUM & ORDER

Plaintiff Chad Weiss is an inmate housed—both currently and at all times pertinent to the allegations in this case—at the Sedgwick County Jail ("SCJ") in Wichita, Kansas. Plaintiff, who proceeds pro se[1] and in forma pauperis, alleges a claim under 42 U.S.C. § 1983 for violation of his constitutional rights based on deliberate indifference to a serious medical need.[2] Plaintiff also ostensibly asserts a state law claim for negligence. The crux of Plaintiff's allegations is that, after he arrived at SCJ in early January 2018 with injuries to his head and jaw, he was denied proper medical care for those injuries. The defendants to this lawsuit are comprised of correctional staff at SCJ and medical personnel affiliated with Correct Care Solutions, LLC ("CCS").

---

[1] Because Plaintiff proceeds pro se, his pleadings are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court does not, however, assume the role of advocate. *Id.*

[2] It is somewhat unsettled whether Plaintiff's deliberate indifference claim is properly treated as arising under the Eighth Amendment or Fourteenth Amendment. No party makes this point—indeed, the complaint and briefing couch Plaintiff's claim as asserted under both the Eighth and Fourteenth Amendments—but there is a distinction. The rights of pretrial detainees are derived from the Fourteenth Amendment's due process clause, while the Eighth Amendment's cruel and unusual punishments clause protects those actually convicted of crimes. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). Here, Plaintiff does not assert whether he was a pretrial detainee or a convict at the time of the incidents alleged. Nor do the Martinez Report (*see infra* Part I.A.1) or briefing clarify this detail. It appears from the record that Plaintiff was likely a pretrial detainee and, therefore, his claim arises under the Fourteenth Amendment. But "[t]he distinction effectively is immaterial . . . because '[u]nder the Fourteenth Amendment due process clause, pretrial detainees are entitled to the degree of protection against denial of medical attention which applies to convicted inmates under the Eighth Amendment.'" *Thomas v. Guffey*, 367 F. App'x 957, 959 (10th Cir. 2010) (quoting *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009)).

A number of defendants have previously been dismissed. The remaining defendants—many of whom are either partially or wholly unidentified by Plaintiff—have filed the following three "sets" of dispositive motions: (1) Defendant Harold Stopp (CCS doctor) moves to dismiss under Rule 12(b)(6) or, alternatively, for summary judgment under Rule 56 (Doc. 55); (2) the CCS Defendants[3] move to dismiss under Rule 12(b)(6) or for summary judgment under Rule 56 (Doc. 61); and (3) the SCJ Defendants[4] move to dismiss under Rule 12(b)(6) (Doc. 58).[5] These motions are ripe. After review, the Court grants all three motions.

I.  **ANALYSIS**

   A.  **Dr. Stopp and the CCS Defendants' Motions to Dismiss or, in the Alternative, for Summary Judgment (Docs. 55, 61)**

   1.  **Threshold Procedural Issue**

The Court analyzes these motions together and considers them as summary judgment motions. Central to the decision to treat these motions as summary judgment motions is consideration of the Martinez Report.[6] The previously-assigned district judge entered an order (Doc. 28) requiring SCJ officials to investigate Plaintiff's allegations and to prepare a report, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), documenting the results of that

---

[3]  The CCS Defendants include: CCS itself, Denise (lnu) (CCS Director of Nursing), Lisa Ireland (CCS LPN), Laura (lnu) (CCS LPN), Shana (lnu) (CCS LPN), Veronica (lnu) (CCS LPN), and Kim Johnson (CCS RN). Although Dr. Stopp is also affiliated with CCS, because his motion was filed separately he is not included within the definition of the "CCS Defendants."

[4]  The SCJ Defendants include: Jeff Easter (SCJ Sheriff), (fnu) Woodson (SCJ Shift Lieutenant), and (fnu) Tucker (SCJ Shift Sergeant).

[5]  The Court notes that there are five additional remaining defendants (i.e., in addition to the moving defendants here). Those defendants have neither been identified nor served. They are named in the operative complaint as: Person 1, Person 2, and Person 3 (CCS physicians); (fnu) (lnu) (1) ("Official D2134"); and (fnu) (lnu) (2) ("Clinic Liaison"). Those unidentified and unserved defendants are addressed in Part I.C, *infra*.

[6]  When the plaintiff is a prisoner proceeding pro se, courts may order prison officials to investigate the plaintiff's allegations and prepare a report—referred to as a "Martinez Report"—detailing the results of that investigation. *See Hall*, 935 F.2d at 1109. The purpose of a Martinez Report is to "ensur[e] a factually sufficient record in cases involving pro se prisoner plaintiffs." *Stewart v. Norwood*, 2017 WL 4284971, at *2 n.25 (D. Kan. 2017).

2

investigation and attaching any supporting affidavits, records, and other official materials. The SCJ officials filed the Martinez Report on December 10, 2019. Doc. 51.

Because the Martinez Report clarifies the facts and details of Plaintiff's medical care and treatment, the Court considers it in the resolution of these two motions, and, therefore, considers the alternative motions for summary judgment. *See McDiffett v. Nance*, 2019 WL 4736951, at *3 (D. Kan. 2019) (because the court considered materials outside of the pleadings—namely, the Martinez Report—defendants' motion to dismiss or alternatively for summary judgment was evaluated using the standards for summary judgment); *cf. Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to the Martinez report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes."). The Martinez Report is thus part of the record and, absent valid challenge, may be treated as providing uncontroverted facts. *Hartz v. Sale*, 687 F. App'x 783, 785 (10th Cir. 2017). To the extent Plaintiff has not come forward with any evidence to contradict the contents of the Martinez Report, the Court therefore treats those findings as uncontroverted facts.[7]

### 2. Standard

Summary judgment is appropriate where the moving party demonstrates that "there is no genuine dispute as to any material fact" and it is "entitled to judgment as a matter of law." FED. R.

---

[7] The Court also notes that, as required by District of Kansas Rule 56.1(f), both Dr. Stopp and the CCS Defendants provided Plaintiff—who, again, proceeds pro se—with the required notice regarding motions for summary judgment. *See* Docs. 57, 63. Although Plaintiff (following a show cause order) filed a response to the motions, he did not properly address any of Dr. Stopp's or the CCS Defendants' factual assertions in that response. *See* Doc. 68; *see also* D. KAN. R. 56.1(b) (requiring a party opposing summary judgment to include "a concise statement of material facts as to which the party contends a genuine issue exists"). The statements of facts set forth in Dr. Stopp's and the CCS Defendants' memorandums in support of their motions (Docs. 56, 62) are thus deemed admitted to the extent those facts are supported by the record. *See* FED. R. CIV. P. 56(e); D. KAN. R. 56.1(a) ("All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.").

CIV. P. 56(a). In applying this standard, courts must view the facts and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### 3.     Analysis[8]

In this case, Plaintiff asserts that his constitutional rights were violated based on a deliberate indifference to a serious medical need. A claim for deliberate indifference involves two components: (1) "an objective component requiring that the pain or deprivation be sufficiently serious," and (2) "a subjective component requiring that the offending officials act with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991). The subjective component requires that a prison official know of and disregard an excessive risk to inmate health or safety. *Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996). But an inadvertent failure to provide adequate medical care does not give rise to a § 1983 claim. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). Nor does mere negligence or even medical malpractice. *Id.*; *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) ("A negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation."). "Rather, a prisoner must allege acts or omissions sufficiently

---

[8] Because the Court considers the alternative motions for summary judgment, the facts relied upon by the Court in considering those motions are uncontroverted or construed in the light most favorable to Plaintiff as the nonmoving party.

4

harmful to evidence deliberate indifference to serious medical needs." *Self*, 439 F.3d at 1230 (internal quotations omitted).

Here, both Dr. Stopp and the CCS Defendants argue that the uncontroverted facts (taken from the Martinez Report) show that they were not deliberately indifferent to Plaintiff's medical needs.[9] Having reviewed the record, the Court agrees that no reasonable jury could find for Plaintiff. The pertinent facts are as follows. Plaintiff arrived at SCJ on January 2, 2018, and LPN Lisa[10] screened Plaintiff upon intake. During that screening, Plaintiff revealed that he had recently suffered head and jaw injuries in Mexico (before his incarceration). LPN Lisa noted that, based on the information Plaintiff provided, the stitches from his injury were due to be removed, but Plaintiff refused the treatment. LPN Lisa noted that Plaintiff did not appear to be in any physical distress or require any emergency medical treatment. Following the screening, LPN Lisa put Plaintiff on suicide watch because Plaintiff made suicidal or threatening statements before and during the screening, and he was placed in a closely-monitored cell.

The next day, Plaintiff submitted a sick call request seeking medical attention for his head injury. LPN Laura responded to the request on January 5, 2018, and scheduled an appointment for that same day. Plaintiff was taken to the clinic for his appointment but, upon arrival, became upset that his appointment was not with a doctor and was therefore returned to his cell. Plaintiff submitted a second sick call request on January 10, 2018. LPN Laura responded to Plaintiff on January 11, 2018, and again scheduled an appointment for that same day. LPN Shana also

---

[9] The CCS Defendants also argue that the facts establish that Plaintiff had no serious medical need (which goes to the "objective component" of his deliberate indifference claim) and that Plaintiff has not exhausted his administrative remedies as against the CCS Defendants. But, given the Court's holding, the Court does not reach those issues.

[10] Although Plaintiff has identified this defendant (Lisa Ireland) by her full name, because the complaint does not identify the last names of the majority of the CCS Defendants, the Court refers to these defendants by their first names for continuity.

responded to the request and reiterated to Plaintiff that he had been placed on the schedule for January 11.

Plaintiff submitted yet another medical request on January 25, 2018, this time seeking a follow-up on x-rays that had been done. On January 27, 2018, LPN Shana responded to that request and scheduled Plaintiff for a follow-up appointment. Dr. Stopp (a physician employed by CCS) saw Plaintiff on January 30, 2018, for the follow-up. Based on the information provided by Plaintiff during that appointment, Dr. Stopp put in a referral on January 31, 2018 for an oral surgeon. Dr. Stopp also obtained approval for a CT scan. Plaintiff's CT scan occurred on February 9, 2018, just over a week after his initial appointment with Dr. Stopp, and took place at an outside clinic.

A few days later, Plaintiff submitted another sick call request, seeking an appointment to go over the CT results. RN Kim responded on February 15, 2018, and scheduled the appointment. But Plaintiff submitted another request on February 22, 2018, again seeking to schedule an appointment to go over the CT results. In response, LPN Veronica also scheduled an appointment for Plaintiff. After a medical release form was obtained from Plaintiff, the CT report was faxed to CCS on February 27, 2018. Dr. Stopp personally reviewed the CT report with Plaintiff that same day. During this appointment, Dr. Stopp also explained his treatment plan for Plaintiff—which was to refer Plaintiff to a neurosurgeon and an oral surgeon—and detailed the process for obtaining approval and making the appointment. Dr. Stopp obtained approval of the neurosurgeon referral that day.

Plaintiff saw an oral surgeon on March 14, 2018. On March 22, 2018, Plaintiff requested details regarding his upcoming neurosurgeon appointment. Denise (CCS Director of Nursing) responded on March 27, 2018 that, although SCJ policy precluded her from relaying the requested

6

information, the appointment had been scheduled and was coming up very soon. Plaintiff's appointment took place a week later, on April 3, 2018. In his notes from that appointment, the neurosurgeon wrote: "Removal of the bone fragments may not change [Plaintiff's] symptoms, may cause seizures, may have seizures anyway without, and may have new permanent problems after surgery." The note further stated that Plaintiff "[did] not have to have the surgery done unless [his] current symptoms are bothering [him] a lot." After reviewing these notes, Dr. Stopp concluded that it was not appropriate to move forward with a referral for surgery at that time. Denise relayed this information to Plaintiff.

But Plaintiff disputed this and reiterated his desire to have the surgery. Although Dr. Stopp again noted that there was nothing in the neurologist's notes to indicate that the surgery was medically urgent—and, rather, that the surgery was an elective procedure—Denise sent a message to Plaintiff on April 4, 2018, stating that Dr. Stopp had sent in a referral for the surgery to the medical director and that it would be the director's decision whether to approve the surgery. That same day Dr. Stopp also put in a request to have the surgery and associated hospital admission approved. Dr. Stopp then discussed the referral with Plaintiff and explained that CCS had to wait for approval before scheduling surgery. The medical director ultimately approved the surgery and the surgery took place on or about April 30, 2018, at an outside hospital.

Nothing in these facts suggests deliberate indifference on the part of any of the medical providers or staff involved in Plaintiff's treatment. As to Dr. Stopp, Dr. Stopp saw Plaintiff for the first time on January 30, 2018, and ordered a CT scan of his head the next day. Dr. Stopp likewise reviewed the CT results the same day they were provided and referred Plaintiff to a neurosurgeon. Although Dr. Stopp initially stated that it was not appropriate to move forward with a referral for surgery, he ultimately put in a request to have the elective surgery approved and the surgery did in

fact take place, less than a month after Plaintiff's initial appointment with the neurosurgeon. Plaintiff may disagree with the course of treatment prescribed by Dr. Stopp and with the timing of his referral and the ultimate surgery. But a prisoner's disagreement with treatment offered by prison medical staff is not sufficient to establish deliberate indifference. *See Perkins*, 165 F.3d at 811; *see also Smith v. Harvey Cty. Jail*, 889 F. Supp. 426, 430 (D. Kan. 1995) ("[N]o claim of constitutional dimension is stated where a prisoner challenges only matters of medical judgment or otherwise expresses a mere difference of opinion concerning the appropriate course of treatment."). And, in the specific context of elective surgeries—like Plaintiff's—the Tenth Circuit has held that a claim of cruel and unusual punishment is not supported where the plaintiff "differs with the medical judgment of the prison doctor, believing that he should have received his elective surgery sooner than he did." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993); *see also Cook v. Hayden*, 1991 WL 75648, at *3 (D. Kan. 1991) (holding that "the delay of elective surgery for a reasonable period of time does not state a claim of deliberate indifference").

The facts likewise do not establish any basis for Plaintiff's claim against LPN Lisa. Plaintiff's claim against LPN Lisa is entirely premised on the screening conducted upon Plaintiff's arrival at SCJ. Plaintiff appears to take issue both with LPN Lisa's examination during the screening and her ultimate placement of Plaintiff on suicide watch. But the uncontroverted facts do not show any deliberate indifference in LPN Lisa's screening. Indeed, the facts show that Plaintiff refused her attempt to have his stiches removed (and, indeed, signed a refusal of treatment form to that effect). LPN Lisa further attests that Plaintiff did not appear to be in any physical distress during the screening or to require any emergency medical treatment. And, again, to the extent Plaintiff simply does not agree with the course of treatment provided by LPN Lisa— including placing him on suicide watch and in a closely-monitored cell—mere disagreement

regarding medical care does not support a § 1983 claim. *See Perkins*, 165 F.3d at 811; *Smith*, 889 F. Supp. at 430.

As to Denise and the various other CCS nurses named here—LPN Laura, LPN Shana, LPN Veronica, and RN Kim—Plaintiff's claims against these defendants are entirely premised on their responses to and handling of his sick call requests.[11] Courts in this District have held that "if a medical professional or jail employee knows that his role is to serve as a gatekeeper for other medical personnel capable of treating the [prisoner's] condition, and if he delays or refuses to fulfill that gatekeeper role due to deliberate indifference, he may be liable for denying access to medical care." *Richard v. Bd. of Cty. Comm'rs of Sedgwick Cty.*, 2014 WL 631289, at *21 (D. Kan. 2014). But scheduling an appointment to be seen by a healthcare provider satisfies that gatekeeper duty. *See Fraley v. Tranbarger*, 2019 WL 480557, at *9 (D. Kan. 2019). Here, the nurses all responded to Plaintiff's inquiries and scheduled his appointments to be seen by Dr. Stopp and at the clinic. To the extent there were any scheduling errors, the Court notes that "[a] scheduling error, by itself, does not constitute deliberate indifference to . . . serious medical needs." *Bruner-McMahon v. Hinshaw*, 846 F. Supp. 2d 1177, 1212-13 (D. Kan. 2012).

Finally, summary judgment is also warranted in favor of CCS itself. As the CCS Defendants argue in their briefing, CCS is not a "person" subject to suit under § 1983. *See Roadenbaugh v. Correct Care Sols.*, 2009 WL 1873796, at *3 (D. Kan. 2009); *Livingston v. Correct Care Sols.*, 2008 WL 1808340, at *1 (D. Kan. 2008). And, to the extent Plaintiff attempts to impute liability on CCS based upon the actions of its employees, the Court notes that a private

---

[11] It is possible that Plaintiff's claim against Denise is also based on her position as CCS Director of Nursing. But, to the extent Plaintiff makes such a claim, it fails. As the CCS Defendants point out in their briefing, an essential element of a § 1983 action is the defendant's direct personal participation in the actions upon which the claim is based. *See Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006). A defendant cannot be held liable based solely upon his or her supervisory capacity. *See Sandifer v. Green*, 126 F. App'x 908, 908 (10th Cir. 2005).

corporation performing a government function—like CCS—cannot be liable under § 1983 on a respondeat superior basis, and, rather, is only liable when execution of a policy or custom inflicts the injury. *See Smedley v. Corrs. Corp. of Am.*, 175 F. App'x 943, 946 (10th Cir. 2005); *Roadenbaugh*, 2009 WL 1873796, at *3. Here, there is no evidence in the record of any such policy or custom, let alone a link between any custom and policy and Plaintiff's alleged injuries. Regardless, for the reasons discussed above, the uncontroverted facts do not establish any deliberate indifference on the part of any CCS employee involved in Plaintiff's treatment.

In sum, Plaintiff received a continuing course of medical care, which included examinations by medical staff and referrals to appropriate medical professionals outside the facility for additional consultation and treatment, including elective surgery. Based on the uncontroverted facts, there is no merit to Plaintiff's claims that these defendants were deliberately indifferent to his medical needs. The Court therefore finds that summary judgment is warranted in favor of Dr. Stopp and the CCS Defendants on Plaintiff's § 1983 deliberate indifference claim.

### B.  SCJ Defendants' Motion to Dismiss (Doc. 58)

The Court next addresses the SCJ Defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6). The Court does not consider the Martinez Report in resolving this motion. Instead, the Court relies solely on the well-pleaded factual allegations in the complaint and the documents attached thereto. After construing those allegations in the light most favorable to Plaintiff as the nonmoving party, the Court finds that Plaintiff fails to state a claim for relief against the SCJ Defendants.

#### 1.  Standard

Courts will dismiss a cause of action under Rule 12(b)(6) in two circumstances. First, dismissal is warranted where an issue of law precludes recovery. *Neitzke v. Williams*, 490 U.S.

319, 326 (1989). Second, dismissal is likewise appropriate where the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if its factual allegations allow a court to draw the reasonable inference that the opposing party is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts must accept well-pleaded factual allegations as true, this obligation does not extend to legal conclusions or to "threadbare recitals of the elements of the cause of action." *Id.* at 678-79.

### 2. Analysis[12]

Again, Plaintiff alleges deliberate indifference to his medical needs in violation of his constitutional rights. The applicable law is set forth in Part I.A.3, above. In short, to prevail on his claim for deliberate indifference, Plaintiff must show (1) that the pain or deprivation he experienced was, from an objective standpoint, sufficiently serious, and (2) that, from a subjective standpoint, the officials acted with a sufficiently culpable state of mind. *See Miller*, 948 F.2d at 1569. In their motion to dismiss, the SCJ Defendants argue that Plaintiff fails to assert any facts plausibly alleging that the SCJ Defendants are liable for the constitutional violation Plaintiff alleges. Put differently, the SCJ Defendants contend that Plaintiff fails to allege that they were responsible for the medical care—or denial of medical care—that forms the basis for Plaintiff's claim.

The Court agrees and finds that Plaintiff has not pleaded facts sufficient to establish a constitutional violation by the SCJ Defendants. Here, Plaintiff's allegations regarding the SCJ Defendants are exceedingly general. With respect to Lieutenant Woodson and Sergeant Tucker,

---

[12] The Court's analysis of the SCJ Defendants' motion to dismiss accepts as true Plaintiff's well-pleaded factual allegations and construes those allegations in the light most favorable to Plaintiff.

11

Plaintiff alleges only that they "responded to [his] grievance procedure" and that they "[r]efused to [exercise] there [sic] authority in any way to correct [the] grievance." Doc. 27 at 13. Aside from these vague allegations, Plaintiff does not include any other facts regarding these defendants in the complaint itself. The documents attached by Plaintiff to his complaint shed some light on his allegations. Based on those documents, it appears Plaintiff sent a grievance on April 7, 2018, complaining that CCS was refusing to allow him to get a surgical procedure. *Id.* at 25. Sergeant Tucker responded that same day, advising Plaintiff of the proper procedure for addressing any issues with CCS. *Id.* Plaintiff then sent a follow-up message, to which an individual identified by the moniker "D2134" responded and repeated what Sergeant Tucker had told Plaintiff. *Id.* at 25-26. As to Lieutenant Woodson, it appears he became involved after Plaintiff appealed a request for medical records. On April 7, 2018, Plaintiff sent a request to a CCS "clinic liaison" requesting an appointment to review his medical records. *Id.* at 27. The individual identified as "D2134" again responded and advised Plaintiff that this was not a "clinic liaison" issue. *Id.* Dissatisfied with this response, Plaintiff appealed the request to Lieutenant Woodson. *Id.* In response to Plaintiff's appeal, Lieutenant Woodson stated that the response Plaintiff had been given was correct. *Id.* He further advised Plaintiff of the proper method for obtaining the requested materials. *Id.* As to Sheriff Easter, Plaintiff's only allegations against him pertain to his supervisory capacity at SCJ. *Id.* at 13.

Having reviewed Plaintiff's allegations, the Court concludes that they do not plausibly allege deliberate indifference on the part of any of the SCJ Defendants. Indeed, there are no allegations that any of the SCJ Defendants were even involved in the treatment of Plaintiff, let alone deliberately indifferent to his medical needs. Simply put, Plaintiff does not plead facts sufficient to satisfy his claim against these defendants. And, to the extent Plaintiff premises his

12

claims against Sheriff Easter entirely on his supervisory capacity, Sheriff Easter cannot be liable under § 1983 solely on a respondeat superior basis and there are no facts plausibly suggesting notice of a pattern of unconstitutional conduct. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). For all of these reasons, Plaintiff has not met his burden and has failed to plausibly allege a violation of his constitutional rights against the SCJ Defendants as a result of deliberate indifference.[13] That claim is therefore dismissed against the SCJ Defendants without prejudice.

### C.     Unidentified and Unserved Defendants

The resolution of these motions leaves no served defendants remaining in the case. There are, however, five remaining unidentified <u>and</u> unserved defendants. They are named in the operative complaint only as: Person 1, Person 2, Person 3, (fnu) (lnu) (1), and (fnu) (lnu) (2). Person 1, Person 2, and Person 3 are identified by Plaintiff as physicians employed by CCS who were allegedly involved in his intake screening. (fnu) (lnu) (1) is identified by Plaintiff as "Official D2134" and (fnu) (lnu) (2) is identified as a "Clinic Liaison"; these defendants responded to Plaintiff's grievances and requests for medical records and, based on the documents attached to the complaint, appear to be SCJ employees.

For the following reasons, the Court enters summary judgment on Plaintiff's § 1983 claim as against Persons 1, 2, and 3, based on the same rationale that led the Court to enter summary

---

[13]   The SCJ Defendants also raise a qualified immunity defense. *See* Doc. 58. Once an official has raised qualified immunity, the plaintiff bears the burden to show (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the conduct at issue. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "Unless the plaintiff provides specific, non-conclusory allegations of fact sufficient to establish these elements, the official is entitled to qualified immunity." *Youngblood v. Qualls*, 308 F. Supp. 3d 1184, 1195 (D. Kan. 2018). Because the first prong of the qualified immunity analysis requires a constitutional violation—and because, as discussed, Plaintiff fails to plausibly allege a violation of his constitutional rights based on deliberate indifference to his serious medical needs—the SCJ Defendants are also protected in their individual capacities by qualified immunity. Plaintiff also fails to demonstrate the second prong of the qualified immunity analysis because he identifies no authority showing that his constitutional rights would be violated under these specific facts.

judgment in favor of the other defendants associated with CCS in this case. *See Smith v. Cooper*, 2012 WL 1094431, at *5 (N.D. Cal. 2012) ("[S]ummary judgment may be properly entered in favor of unserved defendants where (1) the controlling issues would be the same as to the unserved defendants, (2) those issues have been briefed and (3) Plaintiff has been provided an opportunity to address the controlling issues."). Likewise, the Court dismisses the Plaintiff's § 1983 claim, without prejudice, as to the defendants identified as (fnu) (lnu) (1) and (fnu) (lnu) (2) for the same reasons that the Court dismissed that claim as to the other defendants affiliated with SCJ. *See id.* This outcome is justified on several bases.

First, the unidentified and unserved defendants are similarly-situated to the moving defendants. *See Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742-43 (9th Cir. 2008); *see also Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1344 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related."); *Soto v. Warden of Salinas Valley State Prison*, 2016 WL 3661384, at *9 (N.D. Cal. 2016) ("Based on the foregoing, the Court sua sponte grants summary judgment in favor of Defendant SVSP Warden on the basis of facts presented by other Defendants who have appeared, showing that Plaintiff failed to administratively exhaust any of the claims in this action, including the claim against Defendant SVSP Warden."); *Gibbs v. Ocwen Loan Servicing, LLC*, 2014 WL 4414809, at *9 (N.D. Tex. 2014) ("The Fifth Circuit has recognized that, when one defending party establishes that the plaintiff has no cause of action, this defense generally inures also to the benefit of other similarly situated defendants."); *Young v. Smith*, 2014 WL 517502, at *6 (D. Idaho 2014) ("Because the fact that Plaintiff did not exhaust his current claims applies to all Defendants, however, a dismissal here accrues to any unserved

Defendants, including Eliason. Such a dismissal of unserved defendants is particularly appropriate where there is little to no factual distinction between the defendants, and relief as to some defendants effectively means relief as to all.").

Second, Plaintiff has had a full and fair opportunity to explain to the Court why his claims should survive. The issues have been fully briefed and Plaintiff has been given multiple opportunities to respond to the arguments presented here. The claims against the unidentified and unserved defendants are subject to the same arguments.

Third, Plaintiff has already exceeded the allowed time to serve the unidentified and unserved defendants and has not sought an extension. There is no need to delay this case so that these defendants can be served with process, retain counsel, and file their own motions asserting the same arguments already raised here. *See Williams v. Kernan*, 2019 WL 1207454, at *8 (N.D. Cal. 2019).

Fourth, and finally, the Court notes that any other outcome would be inconsistent with Rule 1. Plaintiff has had a full opportunity to litigate his claims against all of the defendants in this case. A contrary result would require the unidentified and unserved parties, and the Court's limited resources, to litigate the same issue (potentially over and over). This is neither desirable nor consistent with Rule 1.

## II.   CONCLUSION

In sum, for the foregoing reasons, the Court grants Dr. Stopp and the CCS Defendants' motions for summary judgment on Plaintiff's deliberate indifference claim. Summary judgment is also entered in favor of the unidentified and unserved defendants associated with CCS—Person 1, Person 2, and Person 3—for the same reasons. The Court also grants the SCJ Defendants' motion to dismiss the deliberate indifference claim and dismisses that claim without prejudice. And the

15

Court also dismisses Plaintiff's that claim without prejudice as against the unidentified and unserved defendants associated with SCJ—(fnu) (lnu) (1) and (fnu) (lnu) (2)—for the same reasons.

Finally, the Court also notes that Plaintiff's operative complaint references a claim for "gross negligence" under Kansas state law. Given that the Court has now disposed of Plaintiff's federal § 1983 claim, which is the claim over which it had original jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining state law negligence claim.[14] Here, it is still relatively early in the case from a procedural standpoint, and Plaintiff's remaining claim is purely a state law claim. Considering the relevant factors, the Court therefore dismisses the state law negligence claim—and any other state law claims the complaint is reasonably construed as asserting—as against all remaining defendants without prejudice for lack of subject matter jurisdiction.

THE COURT THEREFORE ORDERS that the Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. 55) filed by Defendant Harold Stopp is GRANTED.

THE COURT FURTHER ORDERS that the Motion to Dismiss (Doc. 58) filed by Defendants Jeff Easter, (fnu) Tucker, and (fnu) Woodson is GRANTED.

THE COURT FURTHER ORDERS that the Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. 61) filed by Defendants Correct Care Solutions, LLC, Denise (lnu), Lisa Ireland, Laura (lnu), Shana (lnu), Veronica (lnu), and Kim Johnson is GRANTED.

---

[14] A district court has discretion to exercise supplemental jurisdiction over state law claims that derive from "a common nucleus of operative fact" as a pending federal claim. *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164-65 (1997); *see also* 28 U.S.C. § 1367(a). In deciding whether to exercise supplemental jurisdiction, the district court should consider whether the values of judicial economy, convenience, and fairness would be served by retaining jurisdiction. *Wittner v. Banner Health*, 720 F.3d 770, 781 (10th Cir. 2013). A district court may generally decline supplemental jurisdiction when the claims over which it had original jurisdiction have been dismissed. *Exsum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138 (10th Cir. 2004).

In sum, the Court enters SUMMARY JUDGMENT in favor of Defendants Harold Stopp, Correct Care Solutions, LLC, Denise (lnu), Lisa Ireland, Laura (lnu), Shana (lnu), Veronica (lnu), Kim Johnson, Person 1, Person 2, and Person 3 on Plaintiff's claim under § 1983. Plaintiff's § 1983 claim is DISMISSED WITHOUT PREJUDICE as to Defendants Jeff Easter, (fnu) Tucker, (fnu) Woodson, (fnu) (lnu) (1), and (fnu) (lnu) (2). Finally, Plaintiff's remaining state law negligence claim is also DISMISSED WITHOUT PREJUDICE as to all remaining defendants.

IT IS SO ORDERED.

Dated: May 6, 2020                    /s/ *Holly L. Teeter*
                                      HOLLY L. TEETER
                                      UNITED STATES DISTRICT JUDGE